## EMERSON-BRANTINGHAM IMPLEMENT COMPANY v. TOOLEY.

[No. 11,601. Filed December 18, 1923. Rehearing denied May 1, 1924.]

1. SALES.—*Action on Purchase-Money Notes.—Answer of Conversion by Plaintiff of Property Purchased.—Sufficiency.*—In an action on purchase-money notes, a paragraph of answer alleging that the notes were given for the purchase price of the machinery, and their payment secured by a mortgage upon the same, that plaintiff took possession of the machinery and converted the same to its own use, and that its value was in excess of the amount due on the notes, *held* good on demurrer. p. 464.

2. SALES.—*Action on Purchase-Money Notes.—Answer of Breach of Warranty and Conversion.*—In an action on purchase-money notes given for machinery, a paragraph of answer alleging a warranty of said machinery and an agreement on the part of the seller that if it could not be made to fulfill the warranty, the seller should furnish other machinery that would fulfill the warranty or return the money and notes given for the machinery, that the machinery would not do the work as warranted and that the seller was unable to make it do so, that, on demand of the seller, the defendant delivered the machinery

Emerson-Brantingham, etc., Co. *v.* Tooley—81 Ind. App. 460.

to the seller, but that it had neither furnished the defendant with machinery that would fulfill the warrant nor returned the money and notes given for the machinery, and had converted the machinery so delivered to its own use, *held* sufficient on demurrer. p. 464.

3. FRAUDS, STATUTE OF.—*Oral Assumption of Debts of Another.*—*Within Statute.*—*Exception.*—*Statute.*—An oral agreement to assume the debts and obligations of another is within the statute of frauds (§7462, cl. 2, Burns 1914, §4904 R. S. 1881) and unenforceable, but where one company succeeded to the rights and property of another which had sold and warranted certain machinery, and thereafter, under and pursuant to the contract of sale, it demanded and received possession of the machinery, and then refused to comply with the terms of warranty therein, either by furnishing other machinery of the warranted quality or by returning the money and notes given for the machinery, an implied obligation arose that it would furnish the purchaser other machinery in place of that returned or return to him the amount he had paid on the machinery, which is not within the statute. p. 465.

4. SALES.—*Action on Purchase-Money Notes.*—*Answer of Breach of Warranty.*—*Cross-complaint.*—*Sufficiency of Evidence to Sustain Verdict.*—In an action on purchase-money notes given for farm machinery, which was warranted to do good work, the warranty providing that if it did not operate satisfactorily, the seller would furnish the purchaser another machine on the same terms of warranty or return the money and notes given for the machinery, that the seller, under the provisions of said warranty, obtained possession of the machinery and converted it to plaintiff's own use, the property converted exceeding in value the amount due on the notes, and also filed a cross-complaint making the same allegations, on which he recovered a verdict, evidence *held* to show that possession was taken under a chattel mortgage given to secure the payment of said notes and not under the warranty. p. 466.

5. APPEAL.—*Review.*—*Verdict Contrary to All the Evidence.*—*Duty of Court.*—Where the verdict is contrary to all the evidence, it is the duty of an appellate tribunal to set it aside and reverse the judgment. p. 472.

6. TRIAL.—*Instruction.*—*Sales.*—*Mortgage Securing Purchase Money.*—In an action on purchase-money notes given for farm machinery, where the notes were secured by a chattel mortgage, a requested instruction that, on default of the purchaser in the payment of any of the notes, the holder thereof might take possession of the property under the mortgage and sell the same, and, though the property was purchased by the

holder of the mortgage, the proceeds of the sale conclusively fixed the amount for which the debtor was entitled to credit on the notes, was a correct statement of the law, and, being applicable to the cause, should have been given.  p. 472.

7.  TRIAL.—*Instruction.—Sale Under Chattel Mortgage.—Purchase by Holder of Mortgage.—Unauthorized by Evidence.*—In an action on purchase-money notes secured by mortgage, an instruction that if a sale was made under the power contained in the mortgage, and the holder thereof purchased the property, the sale must have been made in strict compliance therewith, and for a fair price, was erroneous, there being no evidence that the sale was not fairly and openly made or that the price paid for the property was disproportionate to the value of the property sold.  p. 472.

8.  TRIAL.—*Instruction.—Sale Under Chattel Mortgage.—Sufficiency of Notice.—Question for Court.*—In an action on purchase-money notes secured by mortgage containing a power of sale authorizing a sale of the mortgaged property on the default of the mortgagor, an instruction authorizing the jury to determine whether the notice of a sale thereunder was sufficient was erroneous, as the question was one of law for the court and not a question of fact for the jury.  p. 472.

From Gibson Circuit Court; *Robert C. Baltzell*, Judge.

Action by the Emerson-Brantingham Implement Company against John Tooley.  From a judgment for defendant, the plaintiff appeals.  *Reversed*.

*U. W. Youngblood*, for appellant.
*T. Morton McDonald*, for appellee.

McMAHAN, J.—June 24, 1912, appellee executed a series of six non-negotiable promissory notes payable to the Geiser Manufacturing Company, hereafter referred to as the Geiser Company, identical in form except as to the amount and date of payment.  All these notes were secured by a chattel mortgage on certain threshing machinery and were assigned to appellant. Two of these notes were paid by sale of the mortgaged property, and this is an action by appellant on the other four notes.  The complaint is in four paragraphs, each in the usual form of an action upon a promissory note.

Appellee filed answer in seven paragraphs and cross-complaint in two paragraphs. The first paragraph of answer was in denial and the second pleaded payment. The third, fourth and fifth paragraphs of answer and the first paragraph of cross-complaint were dismissed. A trial by jury resulted in a verdict and judgment against appellant on its complaint and in favor of appellee on his cross-complaint for $700.

The assignment of error challenges the action of the court in overruling a demurrer to the sixth and seventh paragraphs of answer, in overruling a demurrer to the second paragraph of cross-complaint and in overruling appellant's motion for a new trial.

The sixth paragraph of answer admits the execution of the notes and alleges that the consideration for which they were given was the purchase price of a threshing machine; that the payment of these notes was secured by a mortgage upon said machinery; that on July 14, 1914, appellant took possession of the property so described in such mortgage and converted the same to its own use and that the value of the property so converted was in excess of the amount due on the notes.

The seventh paragraph of answer admits the execution of the notes and alleges, in substance, that they were given as part payment for certain threshing machinery which appellee purchased from the Geiser Company; that such machinery was purchased on a written order wherein the Geiser Company warranted the same, and setting out the part of the contract wherein the seller warranted the machine in certain particulars and agreed, in case it could not be made to fill the warranty, that appellee should, on demand, return the machinery, and the Geiser Company, at its option, should furnish appellee another machine on the same terms of warranty or return the money and notes given for the machinery to the amount of the defective machinery

464    APPELLATE COURT OF INDIANA,

Emerson-Brantingham, etc., Co. *v.* Tooley—81 Ind. App. 460.

returned; that appellee notified the Geiser Company that the machine would not do the work as warranted; that the Geiser Company endeavored to make the machine fill the warranty but that it was not possible to do so; that prior to July 14, 1914, appellant and the Geiser Company entered into an agreement, the nature of which was unknown to appellee, whereby appellant took over and assumed all contracts and liabilities of the Geiser Company, including the contract between the Geiser Company and appellee; that appellee, on demand of appellant, delivered said machinery to appellant under said contract of sale and warranty as he was required to do. That appellant accepted such machinery and failed to furnish appellee another machine and has converted the machine so purchased by appellant to its own use.

The amended second paragraph of cross-complaint, hereafter referred to as the cross-complaint alleges, in substance, the same facts as are set out in the seventh paragraph of answer, and, in addition thereto, alleged that, for this threshing machine, appellee executed the notes mentioned in the complaint and two other notes which last two he had paid; that he also, in part payment for such machinery, delivered to the Geiser Company certain other machinery of the agreed and reasonable value of $600. That appellee performed all things required of him by the contract of warranty, and asking judgment for the amount paid on said notes and for the value of the machinery which he turned over as part payment on the machine for which the notes were given and which appellant had converted.

There was no error in overruling the demurrer to the sixth and seventh paragraphs of answer. *Hartman* v. *Ringgenberg* (1889), 119 Ind. 72; *Dill* v. 1, 2. *O'Ferrell* (1873), 45 Ind. 268; *Ohio, etc., Co.* v. *Hensel* (1894), 9 Ind. App. 328.

Appellant contends the court erred in overruling its demurrer to the cross-complaint, for the reason that the assumption of the obligations and liabilities 3. of the Geiser Company by appellant as alleged, being an agreement to answer for the debt, default and miscarriage of another, must be in writing and signed by the party to be charged therewith. If this were an action on the alleged agreement or to recover damages for a breach of the same, appellant's contention might be well taken. It may be conceded, for the purpose of this appeal, that the alleged agreement on the part of appellant to assume the debts and obligations of the Geiser Company, not being in writing, is within the letter and spirit of the inhibition of the second subdivision of section 1 of the Statute of Frauds and Perjuries, §7462 Burns 1914, §4904 R. S. 1881.

But, according to the allegations of the cross-complaint, appellant, acting under and pursuant to the contract of warranty executed by the Geiser Company, demanded possession of the machinery which had been sold to appellee by the Geiser Company and appellee delivered the possession of such property to appellant pursuant to such agreement of warranty and not otherwise. As heretofor stated, this agreement provided that if the machine could not be made to fill the warranty, appellee should, when requested, return it, and the company, at its option, should furnish appellee another machine on the same terms of warranty, or return the money and notes to the amount represented by the machine returned. As was said in *Burt* v. *Bowles* (1879), 69 Ind. 1: "It is a familiar principle that money paid, or personal property delivered, or real estate conveyed, under a void contract or a contract which cannot be enforced, may be recovered back or ·

compensation recovered therefor. In the case before us, as the alleged express contract of Bowles can not be enforced, the implied contract arises at once that he will return the property he obtained under it, or render compensation therefor." To the same effect see *Jarboe* v. *Severin* (1882), 85 Ind. 496; *Worth* v. *Patton, Admr.* (1892), 5 Ind. App. 272; *Hilker* v. *Curdes* (1922), 77 Ind. App. 466; *Todd* v. *Bettingen* (1910), 109 Minn. 493, 124 N. W. 443. Appellant, by its demurrer, admits it took possession of the machinery under and by virtue of the contract of warranty, converted the same to its own use and did not furnish appellee with another machine or return to him the money and notes he had given. If appellant accepted the provisions of said contract by demanding and accepting the return of the machinery, it cannot now be heard to say that it should not either furnish appellee another machine in place of the one returned, or return to him the amount he had paid on such machinery. Under the facts alleged, the law will imply an agreement on the part of appellant to refund to appellee the money paid by him on the machinery and to return to him the notes mentioned in the complaint. There was no error in overruling the demurrer to the second paragraph of cross-complaint.

We now pass to the contention of appellant that the verdict is not sustained by the evidence. We held the sixth paragraph of answer good on the theory that appellant had taken possession of mortgaged property which was of a value equal to or greater than the amount then due on the notes which it was given to secure. Appellant took possession of the mortgaged property and claims to have purchased the same at a sale held under the provisions of the mortgage. Appellee contends that the sale to appellant was void because of a defective notice. There was no evidence as to the value of the property at the

NOVEMBER TERM, 1923.        467

Emerson-Brantingham, etc., Co. *v.* Tooley—81 Ind. App. 460.

time of the sale; appellee, therefore, failed to prove one of the material allegations of this paragraph of answer. This being true, it is not necessary to determine whether the notices of the sale were good or bad. The verdict in favor of appellee, in so far as the complaint is concerned, if sustained, must rest upon the seventh paragraph of answer. A determination of the sufficiency of the evidence to sustain the verdict as to this paragraph of answer will also settle the question as to whether the verdict in favor of appellee on the cross-complaint is sustained by the evidence. In order to uphold the verdict, there must be evidence sufficient to at least support a legitimate inference that appellant took possession of the mortgaged property under the contract of warranty and not under the provisions of the mortgage. If the evidence, conclusively and without conflict, shows that appellant took possession of the property under and by virtue of the provisions of the chattel mortgage, the judgment must be reversed.

The undisputed facts are that on May 13, 1912, the Geiser Company sold certain threshing machinery to appellee to be delivered about June 15, 1912, and, in writing, warranted the same to be well built, and, all things being equal, to do as good or better work than any other machine of same size and capacity, and agreed, in case appellee, within a fixed period, should notify said company of a failure of the machinery to fill the warranty, and if the company was not able to make the machine fill the warranty, appellee, on request, was to return it to the place where received and the Geiser Company had the option of furnishing appellee another machine on the same terms of warranty or returning to him money and notes to the amount represented by the machine or part thereof returned. In payment of this machinery, appellee turned over to the Geiser Com-

pany certain machinery 'and gave the six notes, heretofore mentioned, and, to secure the payment of these notes, gave a chattel mortgage on the machinery purchased, containing a provision authorizing the mortgagee, on default, to take possession 'of the mortgaged property and to sell the same at public or private sale. The four notes mentioned in the complaint were due and unpaid when this suit was commenced. Between the first and fifteenth of November, 1912, the Emerson-Brantingham Company took over all the property of the Geiser Company and, by an arrangement between said two companies, the notes which appellee had given the latter company were, in writing, assigned to appellant. June 14, 1914, a representative of appellant went to a farm where appellee was threshing wheat with the machine purchased from the Geiser Company. Appellant, on said last named day, through this representative, made a demand for the property, and appellee at that time turned it over to appellant's representative, who, immediately thereafter, announced to those present that appellee had delivered the property to this representative, who immediately gave notice, by posting notices in five public places, that he would, as the agent of appellant, sell such property at public sale June 24, 1914. A copy of the notices so posted was at that time given appellee. The notices of sale stated that appellee had on June 24, 1912, by a chattel mortgage which was recorded in the recorder's office of Warrick County, in Chattel Mortgage record 62 page 133, sold and conveyed the property to appellant, and that, because of appellee's failure to pay the notes, the property would be sold at public sale under the provisions of the mortgage at the time and place stated in the notices. On the day named in the notices, the property was purchased by appellant for $250 and, after paying the costs of such sale, the balance of the $250 was ap-

plied on and wholly paid two of the notes described in the mortgage. After paying these two notes, there was nothing left to apply on either of the notes mentioned in the complaint. The two notes so paid by the sale of the property were delivered to appellee. Appellee contends that the evidence shows that appellant's representative demanded and took possession of the mortgaged property under and by virtue of the provision of the contract of warranty, while appellant contends that the evidence, without conflict, shows that possession was taken under the chattel mortgage. The only witnesses who testified to any fact bearing upon this question were Mr. Barlet, who made the demand and posted the notices of sale, Mr. Gough. a lawyer who accompanied Mr. Barlet when he made the demand for the property, and appellee.

Mr. Gough testified that on July 14, 1914, he went with Mr. Barlet, a former agent of appellant, out to the place where appellee was threshing wheat; they went for the purpose of making a demand on appellee for the machinery under the mortgage; Mr. Barlet had the mortgage with him and made the demand; after a conversation between Barlet and appellee, the former, before leaving the place where they were threshing, prepared some notices and posted one on the separator or at the barn on the farm where appellee was threshing, and posted five of such notices on the public highways in the township where the property was located.

Mr. Barlet testified that on July 14, 1914, he was employed by appellant and instructed to make a demand, under the chattel mortgage, on appellee for the machinery in question; that, as such agent, he made such demand and was given possession of the machinery; part of the attachments belonging to the machinery was not there, but appellee promised to have such at-

tachments at the place on the day when the property was to be sold, which he did; that immediately after taking possession, the witness announced to those present where appellee was threshing that the possession of the machinery had been delivered to the witness by appellee and that he immediately posted notices in five public places, as required by the terms of the mortgage, that the machinery would be sold on a certain day at public sale; that he delivered one of such notices to appellee immediately after demanding and receiving possession of the machinery. The notices stated that, in pursuance of the powers in a mortgage given by appellee to appellant June 24, 1912, and recorded in the recorder's office of Warrick County, Indiana, in Chattel Mortgage record 62 page 133, the witness, as agent for appellant, would sell the machinery at public sale and would apply the money received therefrom on the notes as directed by the mortgage. The treasurer of appellant corporation also testified that the proceeds derived from such sale were applied on and paid two of the notes and that such notes were delivered to appellee.

Appellee testified that Mr. Barlet came to see him a few days before the day on which he made demand for the machinery and that appellee on that day made complaint to Barlet about the machinery, told him about the warranty, and that he would not pay another dollar unless they made the machinery come up to the warranty. Barlet, at that time, told appellee that he knew nothing about the warranty, that he had never seen it. Barlet did not say anything that day about returning the machinery. About two days later, Barlet did demand the machine. The witness repeated the conversation relative to the provisions of the warranty and said it was after that that Barlet demanded the machinery.

Appellee made no denial of the testimony of Gough

and Barlet as to what was said and done July 14, when the latter made the demand for the possession of the machinery. He made no claim when testifying as a witness that appellant demanded or took possession of the property under the contract of warranty. As we read this evidence, it clearly and without dispute shows that the possession of the property was taken under the mortgage and not under the contract of warranty. Appellee made no attempt to tell what was said or done on the day when the property was turned over to Mr. Barlet. He took, or caused the belt leading from the engine to the threshing machine to be taken off and delivered the possession of the machine to Barlet, who, at that time, made a public announcement to those present of that fact. He immediately posted notices stating that on a certain day the property would be sold at public sale by virtue of and under the provisions of a chattel mortgage described in the notice. A copy of this notice of sale was given to appellee. It is true that the notice was, in a sense, defective, in that it was therein stated that the mortgage was given to appellant, instead of stating that it had been given to the Geiser Company and assigned to appellant. While Mr. Barlet had the mortgage with him when he made the demand, the evidence does not show that he showed it or read it to any one at that time or on the day of the sale. The defect in the notice as to the name of the mortgagee did not affect the question of the demand, although the fact that Mr. Barlet and Gough went for the purpose of making a demand under the mortgage, had the mortgage with them and immediately posted notices of sale according to the terms of the mortgage, taken in connection with the other evidence, leaves no room for even an inference that the possession of the property was demanded or taken under a contract of warranty which Barlet had never seen. The defect in

the notice could only affect the sale. Such defect would not under the evidence be sufficient to sustain the verdict.

If there was any evidence to justify an inference that the possession of the property was taken under the warranty, it would be our duty to sustain the verdict, but when there is no evidence to sustain such an inference, and when the verdict is against all the positive evidence, it is our duty to so hold. Jurors must not be permitted to render verdicts through prejudice or otherwise when there is no evidence to sustain their verdict, and when they do, the duty of the court is clear. It is also to be remembered that the burden of proving the allegations of the special answers and cross-complaint was on appellee.

Instruction No. 1 tendered by appellant contained a correct statement of the law applicable to the cause and, in the absence of any other instruction as clearly and fully covering the subject-matter, should have been given.

Appellant also contends that the court erred in giving on its own motion instructions Nos. 12 and 14. The court in No. 12, after instructing the jury that if it found appellant was the holder of the mortgage on the threshing machine, told the jury that if it found appellant, "as holder of such mortgage, attempted to sell such mortgaged property without a decree of foreclosure in court, but under a power of sale contained in the mortgage, and plaintiff purchased such property at such sale, the sale must be fairly and openly made in strict compliance with the powers contained in such mortgage and the price paid must not be clearly, grossly disproportioned to the value of the property, otherwise the sale will be void." There was no evidence that the sale was not fairly and openly made or that the price paid was disproportionate to the value

of the property sold. Neither does appellee make any claim that the sale was not fairly and openly made or that there was any evidence tending to show that the price paid for the property was disproportionate to the value of the property sold. Appellee contends that the notice of sale was insufficient because it stated that the mortgage was given to appellant, when, as a fact, it was given to the Geiser Company. Whether the notice was sufficient was a question of law for the court and not a question of fact for the jury. The court erred in giving this instruction. What has been said in relation to instruction No. 12 applies to instruction No. 14. The sufficiency of the notice was not only a question for the court, but, in our judgment, if any instructions should have been given on this question, the court should have told the jury that the notice was sufficient to sustain the sale. For a discussion of the question as to whether a mortgagor of chattels can maintain an action for the conversion of such chattels when the mortgagee has taken possession of the mortgaged property and purchased it at an invalid sale, see *Sapirie* v. *Collins* (1919), 70 Ind. App. 529.

Appellant's objections to the admission of three letters written by appellee to appellant, dated September 12, 1913, April 29, 1914, and June 10, 1915, should have been sustained.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings consistent with this opinion.